NAPOLI SHKOLNIK PLLC
Hunter Shkolnik
1301 Avenue of the Americas, 10th Floor
New York, NY 10019
(212) 397-1000
hunter@napolilaw.com

IMBESI LAW P.C.
Brittany Weiner
450 Seventh Avenue, Suite 1408
New York, New York 10123
(212) 736-0007 (Phone)
brittany@lawicm.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
AISSA KHIRANI, individually, and on behalf of all others similarly situated,

                              Plaintiffs,

                           v.

DRAFTKINGS, INC.

                              Defendant.
-------------------------------------------------------------------X

**Civil Case No.:**

**COMPLAINT**

**JURY DEMAND**

Plaintiff AISSA KHIRANI ("Plaintiff") on his own behalf and on the behalf of all others similarly situated, by and through his attorneys, Imbesi Law P.C. and Napoli Law PLLC, as and for this putative class action against DRAFTKINGS, INC. ("DraftKings" or "Defendant") allege as follows:

**NATURE OF THE CASE**

1. Plaintiff brings this proposed class action on behalf of himself and all other similarly situated persons within the State of New York to recover losses sustained while gambling on DraftKings' website pursuant to NYGOL § 5-421. Plaintiff further alleges that the contract entered into between Plaintiff and DraftKings regarding the use of DraftKings' service

is void due to the inherently illegal nature of DraftKings' online gambling in the State of New York, pursuant to New York Penal Law ("NYPL") § 225.10 and NYGOL §5-411.

2. DraftKings operates an illegal online sports betting business that is accepting wagers from residents within the State of New York.

3. DraftKings defines its sports betting scheme as Daily Fantasy Sports ("DFS") in a feeble attempt to circumvent New York Penal Law ("NYPL") which expressly prohibits profiting from "any contest, game [or] gaming scheme…in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein."

4. DraftKings' sports betting contests are based upon the performance of team and individuals that participate in NCAA college football, NCAA college basketball, NFL, MLB, MLS, NHL, PGA, MMA, and the NBA.

5. In traditional fantasy sports leagues, contestants draft their teams before the season, maintaining the same core roster for months.

6. In contrast to season-long fantasy sports, DraftKings accepts wagers from bettors for various sporting events using a scheme it created that assigns values (points) based upon the performance of athletes and teams engaged in amateur and professional athletic competitions.

7. After the sporting events are concluded, DraftKings calculates a score using the scheme it created that awards points based upon the various individual college and professional athletes' performance and pays bettors that have the highest total number of points.

8. Entry fees on DraftKings range from 25 cents to more than $5,000 dollars.

9. DraftKings profits from, among other things, the fee that it takes from each entry.

10. Recently, lawmakers have scrutinized DraftKings' business model and operations, alleging all too familiar similarities between DraftKings and online poker, and other gambling websites.

11. DraftKings incorrectly claims its sports bookmaking operations were made legal by the Unlawful Internet Gambling Enforcement Act of 2006 (UIGEA).

12. Indeed, former fifteen-term Representative Jim Leach recently stated that his anti-gambling act – the Unlawful Internet Gambling Enforcement Act of 2006 (UIGEA) – was supposed to stop gambling on the internet, not promote it, referring to DraftKings.

13. Poignantly, Leach told The Associated Press: "There is no credible way fantasy sports betting can be described as not gambling." "Only a sophist can make such a claim." The federal legislation is codified at 31 U.S.C. 5361 *et seq*. The Act expressly provides that it shall not be construed as altering, limiting, or extending any state law that prohibits, permits, or regulates gambling within the United States. 31 U.S.C. 5361 § 5361(b).

14. Moreover, the Federal Bureau of Investigation and the Department of Justice are probing whether the business models of daily fantasy sports betting operators, like DraftKings, violates this and other federal laws. According to a Wall Street Journal report, FBI agents are now speaking with DraftKings customers to inquire about their experiences with the company.

15. DraftKings' operations are also unlawful under New York's criminal provisions. DraftKings defines its sports betting scheme as Daily Fantasy Sports ("DFS") in a deceptive attempt to circumvent New York Penal Law ("NYPL") § 225.00, which expressly prohibits profiting from "any contest, game [or] gaming scheme…in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein" – the precise conduct of DraftKings.

16. NYPL § 225.10 makes it a class E felony to profit from unlawful gambling activity by accepting more than five (5) bets totaling more than five thousand dollars ($5,000), an amount that DraftKings easily exceeds each day it operates. But knowing this, although mistake of law is no defense to criminal liability, DraftKings nonetheless represented to its customers that its sports betting scheme was legal.

17. In additional to criminal conduct, DraftKings' operations, decidedly violates New York GOL § 5-401, which is civil law creating private rights of action against DraftKings. Pursuant to GOL § 5-401: "All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful."

18. Persons, like Plaintiff and the putative class, can and seek to recover damages from DraftKings in the form of restitution and lost wagers.

19. New York General Obligations Law § 5-411 provides: "All contracts for or on account of any money or property, or thing in action wagered, bet or staked, as provided in section 5-401, shall be void."

20. New York GOL § 5-421 provides: "Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof."

21. In other words, every person who shall, lose at any time, the sum or value of twenty-five dollars or more, and renders that amount to the winner within three calendar months, may, after such rendering, sue for and recover the money lost and rendered.

22. Plaintiff and the statewide putative class are entitled, as a matter of law, to recover the money that they lost, and in addition, are entitled to any and all fees that inured to DraftKings on account of the contracts being void.

## PARTIES

23. Plaintiff Aissa Khirani is citizen of New York State and resident of New York County. Plaintiff is a customer of DraftKings and incurred losses using DraftKings' services.

24. The putative class action is a group of persons within New York State with claims similar or identical to Plaintiff.

25. Defendant DraftKings, Inc. is a Delaware Corporation headquartered Boston, Massachusetts. DraftKings is a citizen of the States of Delaware and Massachusetts. DraftKings is a gambling service provider authorized to conduct business and purposefully does conduct business throughout the State of New York.

## JURISDICTION AND VENUE

26. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) which provides for federal diversity jurisdiction where the matter in controversy exceeds $75,000 and is between citizens of different states. Plaintiff and members of the class are diverse from Defendant because Plaintiff and members of the class are citizens of the State of New York and Defendant is a citizen of Delaware and Massachusetts. The aggregate claims of the class members exceed $75,000 and thus satisfies the amount-in-controversy requirement.

27. Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the events and conduct giving rise to the claims occurred in this district.

**STATEMENT OF FACTS**

28. DraftKings is operating an illegal online sports betting business that is accepting wagers from Plaintiff and other members of the class who reside in New York and/or who, while in New York utilized DraftKings.

29. DraftKings accepts wagers from bettors for various sporting events using a scheme it created that assigns values (points) based upon the performance of athletes engaged in amateur and professional athletic competitions.

30. After the sporting events are concluded, DraftKings calculates a score using the system it created that awards points based upon the various individual college and professional athletes' performance and pays bettors that have the highest total number of points.

31. Plaintiff Aissa Khirani is an individual who has utilized DraftKings' website. He has paid fees and has incurred losses of more than twenty-five (25) dollars using DraftKings' services within the last three (3) months, pursuant to NYGOL § 5-421.

32. Plaintiff alleges that gaming on DraftKings' platform requires no skill – that it is a game of pure chance. Indeed, many DraftKings customers lack even rudimentary understanding of sports, or betting strategy in general, and yet, participate in DraftKings' operations, and lose and win based on pure luck.

### I. DraftKings' Unlawful Conduct and Deception

33. DraftKings defines its sports betting scheme as Daily Fantasy Sports ("DFS") in a deceptive attempt to circumvent New York's penal law which expressly prohibits profiting from "any contest, game [or] gaming scheme…in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein."

34. It is a violation of New York Penal Law to accept an illegal wager when it is placed online from a bettor located within New York.

35. DraftKings claims on its website that the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA") legalized its conduct, when clearly, even a cursory review of the statute demonstrates that it has not legalized DraftKings' business operations.

36. Specifically, DraftKings website represents:



37. DraftKings represents that its wagering scheme is "100% Legal in the USA." It is not.

38.     DraftKings' representation that the UIGEA legalized bookmaking and gambling under the guise of "fantasy sports" is false and is misleading.

39.     The UIGEA did not legalize fantasy sports; it simply provided an exemption to banks from being held liable for processing transactions relating to certain fantasy sports.

40.     The UIGEA was enacted to regulate banks and other payment processors, not bookmakers.

41.     The UIGEA makes it a crime for banks to lend money for illegal internet gambling.

42.     Under the UIGEA's definition, unlawful internet gambling means "to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet" that is illegal under federal, state, or tribal law.

43.     States that have laws prohibiting sports betting schemes, including DraftKings' scheme, prohibit DraftKings from accepting payments from or entering into contracts with persons from those jurisdictions. New York is one such jurisdiction.

44.     Since DraftKings accepts wagers from bettors located within the State of New York, it violates New York's criminal law and civil law.

II.     **New York's Law and Washington Laws Prohibit Gambling**

45.     As explained, *supra*, New York's laws prohibit: all wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful; and, prohibit profiting from "any contest, game [or] gaming scheme…in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein."

46. Washington, one of five jurisdictions in which DraftKings does not operate because DraftKings believes that it is unlawful for it to do so, prohibits fantasy sports wagering because it falls under Washington's definition of gambling, which is "risking something of value on the outcome of a contest of chance or a future contingent event not under the person's control or influence to receive something of value in the event of a certain outcome (RCW 9.46.0237).

47. Indisputably, Washington's law and New York's law mirror one another. Thus, DraftKings faces an insurmountable obstacle to even attempt a colorable allegation that its acceptance of New York participants is lawful in any manner whatsoever.

### III.  DraftKings' Scheme is a Game of Chance

48. DraftKings' sports betting scheme is a game of chance that involves little skill. The chance element predominates over any skill set.

49. DraftKings' sports wagering scheme involves selecting a set number of athletes that will play in sporting events.

50. DraftKings establishes a point system that correlates with the athletes' performance during the athletic events.

51. DraftKings determines which athletes its bettors can select and assigns a handicap (spread) based upon the athletes perceived potential to score points.

52. DraftKings eliminates almost the entire element of skill by establishing a handicap (similar to a point spread) for a limited number of athletes it determines can be used for a particular wagering event.

53. By establishing a "spread" for each athlete and limiting the number of athletes the bettors can use, bettors are engaging in a gambling scheme predominately based upon chance.

54. One simple method to determine if a game is based upon skill or chance is to answer the question, "Can a player lose intentionally?"

55. If the answer is "no" it is likely a game of chance.

56. Can a DraftKings player lose on purpose? The answer is "no," evidencing the contest is a games of chance, rather than skill.

57. New York's penal law, its civil law, and the UIGEA prohibit DraftKings' sports betting scheme because it is a game made to depend on chance.

58. According to a survey conducted by the Sports Business Journal, only 1.3% of players realized gains from their participating in online fantasy sports.[1] In other words, they realized losses.

59. Daily Fantasy Sports (DFS), including the sports betting schemes implemented by DraftKings, return casino-type "odds" and involve little skill.

60. A player may win with a randomly generated roster, just as one may win with a carefully curated roster.

61. New York's law makes games of chance illegal even if "the skill of the contestants" is a factor in determining the outcome.

62. DraftKings' gambling scheme is a game of chance because an individual athlete performance will always be affected by material elements of chance that affect scoring and winning outcomes including variables such as player injury, fumbles, weather conditions, controversial officiating, suspension, or other off field circumstances.

---

[1] http://www.sportsbusinessdaily.com/Journal/Issues/2015/07/27/Opinion/From-the-Field-of-Fantasy-Sports.aspx

63. Bettors have no control over all of the variables that affect the performance of the college and professional athletes, rending the DraftKings scheme a game of chance. Gaming professionals agree.

64. On October 15, 2015, the Nevada gaming industry banned DraftKings from accepting customers located in Nevada because it determined DraftKings contests constitute gambling because they are games of chance.

65. The ban by Nevada was a result of a detailed investigation of DraftKings operations, including analysis of how it established the players' handicaps.

66. In response, DraftKings ceased accepting wagers from Nevada residents.

67. If DraftKings believed its "contests" were games of skill and not gambling, it may have continued to allow Nevada residents to participate.

68. Joe Asher, CEO of sports book operator William Hill U.S. explained: "you put up something of value to win something of value…the classic definition of gambling."

69. MGM International Chairman Jim Murren agreed with Asher's sentiments by adding that his organization has been advised by regulators not to get in bed with DFS, and that sports officials are "absolutely, utterly wrong" when they argue DFS is not a form of gambling.

IV. **Gaming Contracts Are Void**

70. DraftKings' contracts with bettors are predicated upon illegal activity and are not enforceable against Plaintiff and members of the class.

71. New York penal law does not prohibit individuals from placing bets but makes it a crime to accept wagers from members of the public as a business.

72. DraftKings is operating its gambling business within the state of New York and accepts bets from individuals located within the State of New York.

73. Each gambling contract DraftKings executes with bettors in New York violates New York civil and criminal law and is unenforceable against its customers.

74. Plaintiff and current and former DraftKings customers, bring this action alleging DraftKings' violations of common law and New York General Obligations Law.

75. Plaintiff alleges that players of DraftKings are entitled to monetary relief pursuant to New York law for restitution and for losses incurred while gambling using DraftKings' services.

76. Plaintiff seeks damages and other appropriate relief on behalf of himself and other similarly situated aggrieved individuals who have used or who are using the services provided by Defendant.

77. In addition, Plaintiff seeks the recovery of all money wagered with DraftKings for the past six (6) years because DraftKings benefited at Plaintiff's and the class members' expense, knowingly collecting and retaining money used for illegal gambling, and equity and good conscience require restitution.

## CLASS ALLEGATIONS

78. Plaintiff Aissa Khirani brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all other similarly situated individuals, as defined:  all persons who entered into contracts with DraftKings from the jurisdiction of New York, and/or paid DraftKings fees or other consideration in connection with those contracts over the past six years, within the jurisdiction of New York; and who rendered their losses to DraftKings within the past three (3) months.

79. Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by

amendment or amended complaint. Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors; government entities or agencies, its affiliates, employees, officers, agents, and directors in their governmental capacities; any judicial officer presiding over this matter and the members of their immediate families and judicial staff; and class counsel.

80. Plaintiff is a member of the Class he seeks to represent. This action is properly maintainable as a class action. The proposed Class is so numerous that joinder of all members is impracticable.

81. There are questions of law or fact common to the Class that predominate over any questions affecting only individual member. Common questions of fact or law include, but are not limited to the following:

   a. Whether Plaintiff and members of the class have entered into contracts with Defendant over the past six years;

   b. Whether such contracts are *per se* void, pursuant to New York criminal law;

   c. Whether such contracts are void pursuant to New York civil law;

   d. Whether Plaintiff and members of Class paid monies to Defendant in consideration of those contracts;

   e. Whether Defendant's operations are a game of chance under all applicable laws and rules;

   f. Whether Defendant's operations violate New York's criminal law;

   g. Whether Defendant's operations violate New York's civil law;

   h. Whether Plaintiff and members of the Class are entitled to restitution and entitled to recovery of lost wagers from DraftKings; and

      i.      Whether Defendant has been unjustly enriched.

82.     The representative Plaintiff's claims are typical of those of the proposed Class and are based upon the same legal theories. The representative Plaintiff's claims arise out of the same practices and course of conduct of Defendant.

83.     The representative Plaintiff's damages arise out of a pattern of nearly identical and repetitive policies and practices conducted by Defendant.

84.     The representative Plaintiff can adequately represent the Class. The representative Plaintiff and his attorneys are experienced in class actions and are familiar with the subject matter of the lawsuit and have full knowledge of the allegations contained in this complaint.

85.     Class certification is appropriate pursuant to Rule 23 because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Class members have been damaged and are entitled to recovery as a result of Defendants' policies and practices.

**COUNT I**
**RESTITUTION PURSUANT TO NEW YORK GOL § 5-441**

86.     Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

87.     New York GOL § 5-401, which is civil law creating private rights of action against DraftKings.  Pursuant to GOL § 5-401: "All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful."

88. New York General Obligations Law § 5-411 provides: "All contracts for or on account of any money or property, or thing in action wagered, bet or staked, as provided in section 5-401, shall be void."

89. Plaintiff and members of the Class entered into contracts with DraftKings that are void.

90. Plaintiff and members of the Class paid monies in consideration of these contracts that are void.

91. Accordingly, Plaintiff and members of the Class are entitled to damages in the form of restitution for monies paid in connection with these void contracts over the course of the past six (6) years.

## COUNT II
## RESTITUTION AND OTHER RELIEF BASED UPON DEFENDANT'S CRIMINAL CONDUCT

92. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all preceding paragraphs as if fully set forth herein.

93. NYPL § 225.00 defines gambling as "stak[ing] or risk[ing] something of value upon the outcome of a contest of chance or a future contingent event not under his control or influence, upon an agreement or understanding that he will receive something of value in the event of a certain outcome."

94. NYPL § 225.10 makes it a class E felony to profit from unlawful gambling activity by accepting more than five (5) bets totaling more than five thousand dollars ($5,000), an amount that DraftKings easily exceeds each day it operates.  But knowing this, although mistake of law is no defense to criminal liability, DraftKings nonetheless represented to its customers that its sports betting scheme was legal.

95. DraftKings defines its sports betting scheme as Daily Fantasy Sports ("DFS") in a deceptive attempt to circumvent New York Penal Law ("NYPL") § 225.00, which expressly prohibits profiting from "any contest, game [or] gaming scheme…in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein" – the precise conduct of DraftKings.

96. An entity is guilty of promoting gambling in the first degree when it knowingly advances or profits from unlawful gambling activity. Because of the nature of the gambling services offered by DraftKings, it has committed promoting of gambling in the first degree pursuant to NYPL 225.10.

97. Criminal conduct creates per se findings and liability for civil liability.

98. Because DraftKings' conduct is criminal, Plaintiff and members of the Class losses are recoverable against DraftKings, including contract considerations.

## COUNT III
## RECOVERY OF LOSSES PURSUANT TO NEW YORK GOL §§ 5-421

99. Pursuant to GOL § 5-401: "All wagers, bets or stakes, made to depend upon any race, or upon any gaming by lot or chance, or upon any lot, chance, casualty, or unknown or contingent event whatever, shall be unlawful."

100. New York GOL § 5-421 provides: "Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof."

101. Plaintiff and members of the Class have sustained losses, and DraftKings has accepted those losses as its profits, within the past three (3) months.

102. Because every person who shall, lose at any time, the sum or value of twenty-five dollars or more, and renders that amount to the winner within three calendar months, may, after such rendering, sue for and recover the money lost and rendered, Plaintiff and members of the Class are entitled to these damages from DraftKings.

## COUNT IV
## FRAUD AND MISREPRESENTATION

103. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all proceeding paragraphs as if fully set forth herein.

104. Defendant made material representations that were false, that Defendant knew were false or were reckless as to the truth, and made with the intent to induce Plaintiff and the class to rely upon and act upon.

105. Specifically, and as detailed above, Defendant represented that it was not gambling and was legal under applicable state and federal laws.

106. Plaintiff and the proposed class acted in reliance on the false, material representations and omissions made by Defendants, which caused them injury.

107. Plaintiff and the proposed class would not have deposited money or engaged in any activity on Defendants' websites if they had known that the services offered by DraftKings were illegal in nature.

108. Defendant was aware that the legality of the games was a material fact in inducing Plaintiff and the proposed classes to give them money in exchange for services and agreeing to the alleged contract.

109. As a result of Defendant's fraudulent representations and fraudulent omissions, Plaintiff and the proposed classes were induced into a contract that they otherwise would not have made and suffered financial injury, harm and damages as described in this Complaint.

## COUNT V
## UNJUST ENRICHMENT

110. Plaintiff, on behalf of himself and the proposed class, repeats and realleges all proceeding paragraphs as if fully set forth herein.

111. Defendant has benefited from monetarily from unlawful, and/or illegal conduct directed to its customers in the State of New York, including from Plaintiff and members of the class.

112. Defendant's benefit was at Plaintiff's and the class members' expense and to their detriments.

113. Defendant has thus unjustly enriched itself.

114. Equity and good conscience require that Defendant disgorge its profits made thereby, and Plaintiff and members of the class further seek restitution on this basis.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff individually and on behalf of the proposed class, requests relief against the Defendant as follows:

   a. An award of monies returned to players resulting from loses incurred through gambling on the DraftKings website pursuant to NYGOL § 5-421;

   b. An award of damages in the form of restitution for the past six (6) years because the contracts are void;

   c. An award of damages in the form of restitution for the past six years because Defendant has unjustly enriched itself;

   d. An award of damages and other appropriate relief for DraftKings' violations of New York State common law;

   e. Notice to the Classes of the action;

   f. An injunction against Defendant prohibiting Defendant from engaging in each of the unlawful practices, policies and patterns set forth herein;

    g.  Reasonable attorneys' fees and costs of this action;

    h.  Pre-judgment and post-judgment interest as provided by law; and

    i.  Such other and further relief that the Court may deem just and proper.

## JURY DEMAND

Plaintiff, on behalf of himself and the proposed class, demands a trial by jury on all claims so triable.

Dated: New York, New York
October 16, 2015

Respectfully submitted,

NAPOLI SHKOLNIK PLLC

___/s/ Hunter Shkolnik_____
Hunter Shkolnik
1301 Avenue of the Americas, 10th Floor
New York, NY 10019
(212) 397-1000 (Phone)

IMBESI LAW P.C.

__/s/ Brittany Weiner_____
Brittany Weiner
450 Seventh Avenue, Suite 1408
New York, New York 10123
(212) 736-0007 (Phone)
(212) 658-9177 (Fax)
*Attorneys for Plaintiff*